OPINIONS OF THE SUPREME COURT OF OHIO
**** SUBJECT TO FURTHER EDITING ****

The full texts of the opinions of the Supreme Court of
Ohio are being transmitted electronically beginning May 27,
1992, pursuant to a pilot project implemented by Chief Justice
Thomas J. Moyer.
        Please call any errors to the attention of the Reporter's
Office of the Supreme Court of Ohio.  Attention:  Walter S.
Kobalka, Reporter, or Deborah J. Barrett, Administrative
Assistant.  Tel.:  (614) 466-4961; in Ohio 1-800-826-9010.
Your comments on this pilot project are also welcome.
        NOTE:  Corrections may be made by the Supreme Court to the
full texts of the opinions after they have been released
electronically to the public.  The reader is therefore advised
to check the bound volumes of Ohio St.3d published by West
Publishing Company for the final versions of these opinions.
The advance sheets to Ohio St.3d will also contain the volume
and page numbers where the opinions will be found in the bound
volumes of the Ohio Official Reports.

Society National Bank, Appellee,  v. Security Federal Savings
and Loan, Appellant.
[Cite as Society Natl. Bank v. Security Fed. S.& L. (1994),
Ohio St.3d    .]
Commercial paper -- Bank deposits and collections --
    Restrictive indorsements -- Former R.C. 1303.27, applied
    -- Depositary bank that has paid a check inconsistently
    with a restrictive indorsement made by payee is liable to
    payee in conversion, when.
1.  Pursuant to former R.C. 1303.27 (former UCC 3-206), a
    depositary bank presented with a check bearing an
    unmodified blank restrictive "for deposit only"
    indorsement made by or on behalf of the payee acts
    inconsistently with the indorsement in cashing or
    crediting the amount of the check to any account other
    than one held in the name of the payee.
2.  A depositary bank which has paid a check inconsistently with
    a restrictive indorsement made by or on behalf of the
    payee is, in the absence of proof of a valid defense,
    liable to the payee in conversion.
    (No. 93-1878 -- Submitted November 15, 1994 -- Decided
December 23, 1994.)
        Appeal from the Court of Appeals for Cuyahoga County, No.
63141.
        On March 12, 1990, defendant-appellant, Security Federal
Savings and Loan ("Security Federal"), accepted for deposit a
check dated March 9, 1990 in the amount of $15,600 drawn by
Black River Computer and payable to the order of Microtek
Systems International ("Microtek").  Microtek, an Ohio
corporation, did not have an account at Security Federal.  A
second Ohio company, NovelTree Productions ("NovelTree"),
maintained a demand deposit checking account at Security
Federal, and the Microtek check was accepted by Security for
deposit into that NovelTree account under the circumstances
described below.

The president and controlling shareholder of both Microtek and NovelTree was one John Vedrody, who was authorized to indorse checks and modify indorsements on behalf of both companies. Vedrody took the $15,600 check made out to Microtek and indorsed it by signing the back of it as follows:

"For Deposit Only
John Vedrody"

On March 12, 1990, Vedrody presented the Microtek check to Security Federal along with a deposit slip which bore the account number of the Noveltree account and the handwritten designation "NovelTree Production" on that part of the slip calling for the name of the depositor. Written on the deposit slip were directions to apply the proceeds of the check by crediting $14,000 to NovelTree's checking account, and tendering $1,000 in cash to Vedrody. Security Federal did not request or require Vedrody to make any revision or modification to the indorsement prior to paying the check, nor does the record indicate that the teller in any way questioned Vedrody in connection with the deposit of a check made out to one corporation (Microtek) into the account of another (NovelTree). Instead, Security Federal's teller accepted the check and applied its proceeds in accordance with the instructions on the deposit slip.

Plaintiff-appellee in this action is Society National Bank (Society"). On March 25, 1988, Microtek had executed a master promissory note in the amount of $2.5 million in favor of Society and had also granted Society a first security interest in the personal property of Microtek, including its accounts receivable and general intangibles. By March 21, 1990 Microtek was in default on its obligations to Society, and on that date Microtek and Society executed a document titled "Surrender of Collateral and Agreement of Liquidation." Pursuant to the agreement Microtek surrendered its assets, including all counts receivable and general intangibles, to Society. On December 7, 1990, Society brought the instant action against Security Federal claiming that Security Federal had paid the check drawn to the order of Microtek inconsistently with the restrictive indorsement made by Vedrody on behalf of Microtek. Society claimed that Security Federal thereby violated R.C. 1303.27(C) and 1303.55, and brought suit claiming itself to be the legal successor to any legal claims Microtek had against Security Federal. In its complaint against Security Federal, Society demanded judgment in the $15,600 face amount of the Microtek check and other relief.

Security Federal answered and Society moved for summary judgment in its favor, which was denied. Thereafter, and with the court's approval, the parties waived trial and agreed to submit the cause for resolution on the basis of an agreed statement of facts and trial briefs.

The court of common pleas entered final judgment in favor of the depositary bank, Security Federal. As to the $1,000 cash payment made to Vedrody, the court held that Vedrody had "modified the restrictive indorsement," by executing a deposit slip which instructed Security Federal to return $1,000 in cash to him. The court further held that the check was paid consistently with the restrictive "for deposit only" indorsement, in that the deposit slip only served to clarify

the identity of the account into which the remaining $14,600 of the Microtek check was to be deposited.

The court of appeals reversed and held that Security Federal wrongfully paid the funds to a non-Microtek account inconsistently with the "for deposit only" restrictive indorsement. It held that Security Federal thereby violated former1 R.C. 1303.26 (former UCC 3-205), which defines restrictive indorsements, and former R.C. 1303.27(C) (former UCC 3-206), which requires a bank to accept checks consistently with a restrictive indorsement. The court of appeals entered final judgment in favor of Society.

The cause is now before this court pursuant to the allowance of a motion to certify the record.

Howard E. Coburn and Richard G. Zeiger, for appellee.

Dworken & Bernstein Co., L.P.A., Patrick J. Perotti and David J. Richards, for appellant.

A. William Sweeney, J. We decide this case pursuant to R.C. Chapters 1303 and 1304 which codify Articles 3 and 4 of the Uniform Commercial Code ("UCC"), and authorize the payee of a check to employ indorsements to restrict the way in which a check drawn to his order will be paid. Specifically, former R.C. 1303.27 (former UCC 3-206) provided:

"(C) Except for an intermediary bank, any transferee under an indorsement which *** includes the words *** 'for deposit,' *** must pay or apply any value given by him for *** the instrument consistently with the indorsement ***."

We today hold that, pursuant to this statute, a depositary bank2 (here, Security Federal) presented with a check bearing a blank restrictive "for deposit only" indorsement made by or on behalf of the payee acts inconsistently with the indorsement in cashing or crediting the amount of the check to any account other than one held in the name of the payee. This holding is consistent with precedent established by other courts and with the conclusions expressed in legal treatises. See, Mid-Atlantic Tennis Courts, Inc. v. Citizens Bank & Trust Co. of Md. (D.Md. 1987), 658 F.Supp. 140, 143 (citing White & Summers, Uniform Commercial Code [2d Ed. 1980] 596); AmSouth Bank, N.A. v. Reliable Janitorial Serv., Inc. (Ala. 1989), 548 So.2d 1365, 1367; Cf. O'Petro Energy Corp. v. Canadian State Bank (Okla. 1992) 837 P.2d 1391. See, also, Underpinning & Found. Constructors Inc. v. Chase Manhattan Bank, N.A. (1979), 46 N.Y.2d 459, 414 N.Y.S.2d 298, 386 N.E.2d 1319. Accord 4 Hawkland & Lawrence, UCC Series (1994), Section 3-205:05 (Art. 3) at 366 ("When an instrument is indorsed 'for deposit,' the holder has signified that the proceeds obtained from payment of the instrument can only be used to credit a bank account. Taken literally, this would permit the proceeds to be credited to any bank account, although the clear purpose of the indorsement is to limit the application of the proceeds to deposit in the holder's bank account"); 2 Hart & Willier, Bender's Uniform Commercial Code Service, Commercial Paper under the Uniform Commercial Code (1994), Section 3A.02, at 3A-5, ("*** [W]hen an instrument is indorsed 'For Deposit,' the indorsee, almost always a bank, is obligated to put any money received for the instrument in the indorser's account."); 1

Lawrence, Commercial Paper and Payment Systems (1990), Section 3.6[3] at 3-37 ("A payee who indorses a check 'for deposit only' provides notice to the depository [sic] bank that the check is to be credited to the payee's account. *** [T]he bank cannot credit the check to any account other than the payee's or apply the check to an outstanding indebtedness.")

Pursuant to Am.Sub.S.B. No. 147, former R.C. 1303.27 was replaced by a revised version of R.C. 1303.26. Our holding today is consistent with the express terms of newly enacted R.C. 1303.26 (1990 UCC 3-206[c]), which provides:

"(C) If an instrument bears an indorsement *** using the words *** 'for deposit,' *** or other words indicating a purpose of having the instrument collected by a bank for the indorser or for a particular account, the following rules apply:

"***

"(2) A depository bank that purchases the instrument or takes it for collection when so indorsed converts the instrument unless the amount paid by the bank with respect to the instrument is received by the indorser or applied consistently with the indorsement." (Emphasis added.)

This revision does not change prior law, but merely constitutes an attempt to clarify and continue the existing UCC law of restrictive indorsements. See Official Comments 1 and 3 to the 1990 draft proposals.3

In addition to former R.C. 1303.27, former R.C. 1303.55 (former UCC 3-419) provided, in part:

"(C) Subject to the provisions of sections 1303.26, 1303.55, 1303.69, and 1304.11 of the Revised Code, concerning restrictive indorsements, a representative, including a depositary or collecting bank, who has in good faith and in accordance with the reasonable commercial standards applicable to the business of such representative dealt with an instrument or its proceeds on behalf of one who was not the true owner is not liable in conversion or otherwise to the true owner beyond the amount of any proceeds remaining in his hands."

"(D) An intermediary bank or payor bank which is not a depositary bank is not liable in conversion solely by reason of the fact that proceeds of an item indorsed restrictively, pursuant to section 1303.26 and 1303.27 of the Revised Code, are not paid or applied consistently with the restrictive indorsement of an indorser other than its immediate transferor."

This statute constitutes additional authority for holding that, in the absence of a valid defense, a depository bank which has paid a check inconsistently with a restrictive endorsement is liable to the payee in conversion. See AmSouth Bank, N.A. v. Reliable Janitorial Serv., Inc., supra, 548 So.2d at 1367 ("The inference from [Alabama's version of UCC-3-419] is that banks that are depositary banks may be liable in conversion 'solely by reason of the fact that proceeds of an item indorsed restrictively *** are not paid or applied consistently with the restrictive indorsement.'" (Emphasis sic.)

In the case at bar, the parties agree that when John Vedrody indorsed the check by affixing his signature under the words "for deposit only," he restrictively indorsed the check on behalf of Microtek, the named payee. Thereafter the check could only, consistent with the restrictive indorsement, be

deposited into an account held by Microtek, the named payee. When Security Federal credited an account of a separate legal entity, NovelTree, it thereby converted the check by acting in express contravention of the restrictive indorsement.

Security Federal argues that it acted lawfully in accepting the check into the account of a separate legal incorporated entity (NovelTree) because the check was presented by Vedrody with a written deposit slip signed by Vedrody (an authorized agent of both the payee Microtek and NovelTree), directing deposit of the net proceeds of the check into that separate NovelTree account. Security's argument lacks merit. The issue is not whether Vedrody had legal authority to modify the indorsement he previously had made on behalf of Microtek. The issue is whether his act of preparing a deposit slip on behalf of NovelTree instructing payment of the check in a manner contrary to the indorsement he had previously made on behalf of Microtek was an act sufficient to accomplish a modification of that indorsement. We find no statutory authority for the proposition that a depositary bank may disregard a restrictive indorsement based on the content of a deposit slip which is facially inconsistent with that restrictive endorsement. On the contrary, the law compels the opposite conclusion. A deposit slip, which is neither attached to nor incorporated into the check itself, does not constitute an allonge, nor can a writing contained on a deposit slip serve as a restrictive indorsement, or a modification of a restrictive indorsement. See former R.C. 1303.23(B) ("An indorsement must be written by or on behalf of the holder and on the instrument or on a paper so firmly affixed thereto as to become a part thereof." [Emphasis added.]) See, also, All American Finance Co. v. Pugh Shows, Inc. (1987), 30 Ohio St.3d 130, 132, 30 OBR 443, 445, 507 N.E.2d 1134, 1136, at fn. 3.

Security Federal further contends that Society, as Microtek's successor-in-interest, can assert no greater rights than could Microtek itself, and that Microtek would be estopped to assert payment of the check inconsistent with the restrictive indorsement. Security Federal argues that Society, as successor-in-interest to Microtek, is estopped from asserting Microtek's conversion claim because Vedrody achieved the very result he intended when Security Federal deposited the check's net proceeds into the NovelTree account and remitted $1,000 in cash to him. We reject this argument as we disagree with its underlying premise that Microtek itself would be estopped from asserting its claim in conversion. Cf. Cairo Cooperative Exchange v. First National Bank of Cunningham (1980), 228 Kan. 613, 620 P.2d 805, 808, modified and rehearing denied (1981), 229 Kan. 184, 624 P.2d 420. ("[D]efendant [a depositary bank] cannot assert the defense of estoppel where it failed to act with ordinary care.") In addition, Security Federal misconstrues the identity of the owner of the check in this case. The parties have stipulated that John Vedrody indorsed the Microtek check with his signature under the words "For Deposit Only" as president of Microtek. His action in presenting the check to Security Federal with a deposit slip directing a deposit into NovelTree's account was made on behalf of NovelTree, as is evident from the deposit slip itself, which specifies the depositor by name as NovelTree and includes the

account numbers of an account held by that legal entity.  To accept Security Federal's suggestion that Vedrody's act in preparing the NovelTree deposit slip was simultaneously an act made on behalf of Microtek would require us to merge the legal identity of two separate incorporated entities with the individual who serves as president, controlling shareholder, and authorized signator of both.  Ohio law does not permit such a merger.  The doctrine that a corporate legal entity is distinct from his individual shareholders should be disregarded only when justice cannot be served in any other way.   E.S. Preston Assoc., Inc. v. Preston (1986), 24 Ohio St.3d 7, 11, 24 OBR 5, 9, 492 N.E.2d 441, 446.  We conclude in this case that equitable estoppel principles do not preclude Society from asserting Microtek's conversion claim.4

We are aware that Vedrody had the legal authority to convert the Microtek check into bearer paper by simply indorsing the check with his signature.  Had Vedrody done so he might have simply cashed the check, thereby perhaps keeping its proceeds from the reach of Microtek's secured creditor, Society.  We find this to be largely irrelevant, however, as is the fact that Vedrody might have deposited the $15,600 check into a Microtek account and promptly thereafter withdrawn all the funds in the account, leaving Society with no claim against the depositary bank.  The question before us is not what Vedrody, as an authorized agent of both Microtek and NovelTree, might have done, the task before us is to determine the legal effect of what both Vedrody and Security Federal actually did.  Vedrody restrictively indorsed the check on behalf of Microtek, and then presented it to Security Federal with a separate request made on behalf of Noveltree that the bank pay the check inconsistently with the Microtek indorsement.  At the moment that Security Federal honored that latter request, it incurred liability in conversion to Microtek.  We affirm the judgment of the court of appeals and find that Society, as successor to Microtek's general intangibles (including choses in action), is entitled to judgment on its claim.

Judgment affirmed.

Moyer, C.J., Douglas, Jones and F.E. Sweeney, JJ., concur.
Wright and Pfeifer, JJ., dissent.
Fred E. Jones, J., of the Twelfth Appellate District, sitting for Resnick, J.

FOOTNOTES:

1  The enactment of Am.Sub.S.B. No. 147 effective August 19, 1994 has modified both the content and codification of the Uniform Commercial Code into R.C. Chapters 1303 and 1304. Am.Sub.S.B. No. 147 adopted many proposals to revise Articles 3 and 4 of the UCC made by the National Conference of Commissioners on Uniform State Laws and the American Law Institute in 1990.  ("1990 UCC draft.")  See LSC Analysis of Am.Sub. S.B. 147, 1 Baldwin's Ohio Legislative Service, 1994 Session Laws--Full Text at 5-657.  See also, Uniform Commercial Code, Articles 3 and 4, Proposed Final Draft (1990), American Law Institute.

2  A "depositary bank" is the first bank to which a check is transferred for collection.  Former R.C. 1304.01 (UCC 4-105).

3  Official Comment 3 provides the following example:

"*** [A] check is payable to X, who indorses in blank but writes above the signature the words 'For deposit only.' The check is stolen and is cashed at a grocery store by the thief. The grocery store indorses the check and deposits it in Depositary Bank. The account of the grocery store is credited and the check is forwarded to Payor Bank which pays the check. Under subsection (c), the grocery store and Depositary Bank are converters of the check because X did not receive the proceeds of the check." (Emphasis added.) The case at bar is analogous to this example.

4  We do not speculate as to whether this conclusion would obtain were successful prosecution of Microtek's claim likely to accrue to Vedrody's individual benefit. In such a case, a piercing of Microtek's corporate veil so as to preclude assertion of the conversion claim by Vedrody might well be justified.

Wright, J., dissenting.  I agree wholeheartedly with both paragraphs of the syllabus and the majority's determination that Security Federal applied the funds inconsistently with the restrictive indorsement in this case. However, unlike the majority, I would not hold Security Federal liable to Society in conversion, because the unique circumstances of this case provide Security Federal with a valid defense.

The majority correctly points out that John Vedrody had the authority to indorse checks and modify indorsements on behalf of Microtek. However, the majority fails to note the critical fact that the parties stipulate that Microtek had given Vedrody the unlimited authority to direct the application of its check proceeds. The majority does concede that Vedrody had the authority to cash the Microtek check or withdraw all the funds from the Microtek account after depositing the check proceeds into Microtek's account.

By stating that Vedrody was acting only on behalf of NovelTree when he directed Security Federal to return cash and to deposit the remaining check proceeds into the NovelTree account, the majority is, in essence, saying that Vedrody was some thief who was stealing the proceeds from Microtek. Obviously, this cannot be so, because Microtek had given Vedrody the authority to deposit the funds into the NovelTree account. It is clear that the teller at Security Federal followed Vedrody's instructions regarding the application of the Microtek check not because Vedrody was an authorized agent of NovelTree, but because he was an authorized agent of Microtek. In point of fact, the parties stipulate that the Security Federal teller personally knew Vedrody and knew that Microtek had given Vedrody the unlimited authority to direct the application of the proceeds of the Microtek check.

As is evident from the second paragraph of the syllabus, a depositary bank is not automatically liable in conversion for applying funds inconsistently with a restrictive indorsement. A depositary bank is liable only if it has no valid defense. R.C. 1301.03 provides: "Unless displaced by the particular provisions of Chapters 1301, 1302, 1303, 1304, 1305, 1306, 1307, 1308, 1309, and 1310 of the Revised Code, the principles of law and equity, including *** the law relative to *** principal and agent, estoppel, *** or other validating or

invalidating cause shall supplement their provisions."  Thus, the common-law principles relating to estoppel, waiver, and agency supplement the statutory provisions concerning restrictive indorsements.  If the defenses of waiver and estoppel were not available, I could place a "for deposit only" restrictive indorsement upon a check payable to me, take the check to my bank, instruct the teller that I have changed my mind and want cash, and then sue the bank in conversion if it gives me the cash instead of depositing the check proceeds into one of my accounts.

Microtek, through the words and actions of its general agent who was authorized to direct the application of check proceeds, waived the right to have the check proceeds deposited into one of its own accounts.  A waiver is generally defined as a "voluntary relinquishment of a known right."  State ex rel. Hess v. Akron (1937), 132 Ohio St. 305, 307, 8 O.O. 76, 77, 7 N.E.2d 411, 413.  See, also, Michigan Auto. Ins. Co. v. Van Buskirk (1927), 115 Ohio St. 598, 155 N.E. 186, paragraph one of the syllabus.  A person may waive rights and privileges secured by contract, conferred by statute, or guaranteed by the Constitution, provided the waiver does not violate public policy.  See Hess, supra, at 307, 8 O.O. at 77, 7 N.E.2d at 413.  Furthermore, a duly authorized agent may waive the rights of his principal, with respect to matters within the scope of the agent's authority.  See 28 American Jurisprudence 2d (1966) 837, Estoppel and Waiver, Section 155.  The only means by which a corporation like Microtek can waive its contractual or statutory rights is through the actions of an authorized agent like Vedrody.

In this case, Vedrody exercised his express authority to direct the application of the check proceeds when he instructed Security Federal to return cash and to deposit the remaining proceeds from the Microtek check into the NovelTree account.  By doing so, Vedrody voluntarily relinquished Microtek's right to have the check proceeds deposited into one of its own accounts in accordance with the restrictive indorsement.

Because Microtek, through its authorized agent, waived the right to have the check proceeds deposited into one of its accounts, it is precluded from asserting any claims against Security Federal based upon the latter's failure to apply the check proceeds consistently with the restrictive indorsement. Society, as Microtek's successor-in-interest, can assert no greater rights than Microtek.  Therefore, Society cannot assert any claims against Security Federal for violating the restrictive indorsement on Microtek's check.

For the foregoing reasons, I respectfully dissent.

Pfeifer, J., concurs in the foregoing dissenting opinion.